The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. Upon reconsideration of the evidence, the undersigned have reached different facts and conclusions than those reached by the Deputy Commissioner. Accordingly, the November 1, 1995, Opinion and Award by Deputy Commissioner Cramer is HEREBY REVERSED AND VACATED.
Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their own findings of fact, conclusions of law, and ultimate award.
The Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. On the occasion of the alleged injury by accident, May 21, 1993, the parties were subject to and bound by the provisions of the Workers' Compensation Act, and the employer-employee relationship existed between the plaintiff and the defendant-employer.
2. The plaintiff's average weekly wage was $420.19.
3. The preliminary issue is whether plaintiff sustained an injury by accident to her right knee arising out of and in the course of her employment with the defendant.
* * * * * * * * * * *
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. The Industrial Commission has jurisdiction over this claim, all parties being properly before the Commission.
2. On the date of the initial hearing, plaintiff was 45 years old. She is five feet ten and one half inches tall.
3. Plaintiff has been working for the defendant since February 1988. She is based at Raleigh-Durham and has been an international flight attendant since 1993. At the time of the initial hearing, plaintiff was primarily assigned to the 767, flying routes to Europe, most often the route from Raleigh-Durham to Paris.
4. As part of her job as a flight attendant, once every year plaintiff is required to complete training at the American Airlines Flight Academy in Dallas, Texas. As part of this training she completes evacuation drills on flight simulators that are mock-ups of sections of airplanes. The flight academy contains simulators for each type of airplane, so for example, a 757 simulator is different from a DC-10 simulator. This once a year training is the only time plaintiff performs emergency evacuation drills on a simulator. In one day, plaintiff would complete four different drills.
5. When she was initially hired, plaintiff had completed initial training in Dallas and had been qualified on several planes. She had not trained on a new plane since that time, but had continued her required yearly training for the planes for which she was qualified.
6. Plaintiff was in Dallas, Texas on May 21, 1993, because she had been "drafted" by American Airlines to train on a new airplane. If not enough personnel volunteer for training on a new plane, the airline will select personnel to participate.
7. During the particular drill involved, the flight attendant is seated in a jumpseat on a simulator. The instructor stands in front of the flight attendant and gives the command to evacuate. The attendant must unfasten her seat belt, jump up and turn 180 degrees to hit the evacuation signal. She then runs to open the door. All during this time, the attendant is reciting the script of what she must tell the passengers. While standing at the door, she calls to two persons to assist and sends them down the slide first. All of this is done within 10 seconds, under rushed conditions, as this is a simulated emergency.
8. Plaintiff spent two days in Dallas in this training, the second day being tested on the simulator for a 757. Plaintiff had not been trained on a 757 before. Prior to this, she was qualified on the 767, the DC-10, Super 80 and 727.
9. In the late morning of May 21, 1993, plaintiff had completed two evacuation drills and was involved in her last drill in order to be qualified. Plaintiff was seated in a jumpseat at 1-L with her back to the cockpit and the door to her right. The 1-L area is a primary exit.
10. On signal, plaintiff began her drill by giving the command for passengers to come forward. She jumped up, turned 180 degrees and hit the evacuation signal which is above the jumpseat, at plaintiff's back when she is seated. As she turned, she felt a pulling in her right knee from the twisting motion. She then ran to the door, opened the door, and gave the evacuation signal, completing the drill as required.
11. Although the layout of the jumpseat of the 757 is similar to that of the 767 (on which plaintiff had previously trained), it was a new type of airplane for plaintiff. The 1-L jumpseat on the 757 is closer to the forward entry door, and it is somewhat more confined, especially for plaintiff since she is very tall. Speed was of importance due to the simulated emergency nature of the drill. Plaintiff was unfamiliar with the feel of this particular jumpseat and its surroundings.
12. On May 21, 1993, plaintiff sustained in injury by accident arising out of and in the course of her employment with the defendant-employer, when she jumped up from the jumpseat and made a sudden, abrupt turn twisting her right knee, while participating in the emergency evacuation drill at the 757 1-L door location. The fact that plaintiff was rising from a low jumpseat and making a sudden, abrupt 180 degree turn while participating in an emergency drill in a confined area and with equipment and an airplane with which she was unfamiliar interrupted plaintiff's normal work routine and introduced unusual conditions which were likely to result in unexpected circumstances. The Deputy Commissioner found, and the undersigned likewise find that plaintiff was credible and candid in her testimony as to how events took place.
* * * * * * * * * * *
The foregoing stipulations and findings of fact engender the following:
CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident on May 21, 1993, when her work routine was interrupted by several circumstances which introduced unusual conditions likely to lead to unexpected consequences and resulted in her right knee injury. G.S. 97-2 (6).
2. Plaintiff is therefore entitled to such medical and indemnity compensation as may be due to her for her compensable injury.
As the only issue for determination was the limited issue of liability, there is no further evidence of record on which to specify specific amounts due. Any request for an attorney's fee for plaintiff's counsel shall await final determination of this matter.
The foregoing findings of fact and conclusions of law engender the following
AWARD
1. Defendants shall pay for all medical treatment expenses incurred as a result of plaintiff's compensation injury by accident, when bills for the same have been submitted by the carrier to the Industrial Commission for approval
2. Defendants shall pay the costs.
IT IS ORDERED that this case be REMOVED from the Full Commission docket.
This the __________ day of ________________________, 1996.
 S/ ___________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ___________________________ THOMAS J. BOLCH COMMISSIONER
S/ ___________________________ DIANNE C. SELLERS COMMISSIONER
JHB/nwm 10/02/96